IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA, AT ELKINS

THOMAS H. LANTZ, JR. and
ELLEN MARIE LANTZ,

        Plaintiffs,

v.

CIVIL ACTION NO.:  2:17-CV-92 (Bailey)

NEW CREEEK WIND, LLC (formerly AES NEW CREEK, LLC);
EVERPOWER WIND HOLDINGS, INC. (EVERPOWER); AND ENBRIDGE HOLDINGS, LLC.

        Defendants.

ELECTRONICALLY FILED
June 29, 2017
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiffs, Thomas H. Lantz, Jr. and Ellen Marie Lantz, individually and as owners of a certain real property located at New Creek, WV, as full time residents of the aforementioned real property, hereby file the instant Complaint against Defendants and in support of their claims allege the following:

## INTRODUCTION

1.    The following pled causes of action involve claims of substantial and unreasonable injury and/or interference caused by Defendants which significantly negatively affects plaintiff's personal health and well-being and /or their right to reasonable use and enjoyment of their property, and the loss of value to their real property interests as a direct and proximate result of Defendants continuously operating an exempt commercial wholesale renewable energy

electric generator status windmill project known as the NEW CREEK WIND PROJECT (hereinafter "NCW"). On or about November 01, 2016 or thereafter, the project commenced generation of electrical power at this 49-turbine, 103 megawatt( hereinafter "MW) facility. Since November 01, 2016 or thereafter, Defendant or Defendants, or each of them as their interests may appear and as each entity's direct or indirect conduct effected the ultimate generation of electrical power, has continuously and unreasonably interfered with the personal and property rights of Plaintiffs as will more particularly and specifically be pled hereinafter.

## PARTIES

2..    Plaintiffs, Thomas H. Lantz, Jr. and Ellen Marie Lantz are owners and, are full time residents of real property which is continually unreasonably and adversely affected by the presence and operation of the "NCW". Upon information and belief, the same real property is located approximately between .5 and 1.0 miles from the offending commercial utility scale wind turbines. Plaintiffs can view___ utility scale wind turbines while standing within the boundaries of their property (To be supplied by supplemental pleading).

3.    Plaintiffs real property is more particularly and specifically described in Deed Book 255 at Page 347 and Deed Book 229 at Page 712 and recorded in the land records for Grant County, West Virginia.

4.    By information and belief, Defendant NEW CREEK WIND, LLC (hereinafter "NEW CREEK) is a limited liability company with it's principal location believed to be at 4300

Wilson Blvd., Arlington, VA 22203. Said Defendant is the owner of the citing certificate issued or approved by the West Virginia Public Service Commission.

5. Upon information and belief, Defendant EVERPOWER WIND HOLDINGS, INC (hereinafter "EVERPOWER"), is a is a foreign corporation. Said Dfendant may have been and presently a member/owner of Defendant NEW CREEK WIND L.L.C.

6. Defendant ENBRIDGE HOLDINGS, LLC (hereinafter "ENBRIDGE") identifies its principal location to be in Houston Texas, and is a foreign limited liability corporation and wholly owned by ENBRIDGE, INC. a foreign corporation. Said ENBRIDGE HOLDINGS, LLC may be the sole or 100% member owner of NEW CREEK WIND, LLC.

## JUISDICTION AND VENUE

7. The NCW project is wholly located in Grant County, West Virginia. Jurisdiction is predicated upon diversity of citizenship of the parties pursuant to 29 U.S.C. section 1332, and that the amount in controversy exceeds $75,000.00.

## UNDERLYING FACTS

8. On or about December 19, 2008 the predessessor to the defendant "NEW CREEK" applied to the West Virginia Public Service Commission (hereinafter "WVPSC") for approval to construct a commercial wind generation facility. The project, known as the NEW CREEK WIND PROJECT, which originally envisioned a larger array of commercial wind turbine generators, was later modified to the present 103 MW 49 array generation.(See WVPSC case No. 08-2105-5-E-CS-PC-PW and 14-1905-E-CS-PC-PW).

9. On or about November 14, 2014, "NEW CREEK" filed an application requesting a waiver of the Citing Certificate of Public Convenience and Necessity(hereinafter "CPCN") modifications requirements.

10. On December 30, 2014, the WVPSC approved the construction of the requested generators and application identified in the preceeding paragraph and issued its "Final Order".

11. Following receipt by Defendants of the "Final Order of the WVPSC", Defendants commenced construction of the 49 array commercial wind generators.

12. The 49 array commercial wind generators are wholly located within Grant County, West Virginia. Grant County does not currently nor did it at the time during which defendants sought permission to construct "NCW", nor any time , have in place any specific land use restrictions or guidelines applicable to the siting of commercial turbines, which were enforced.

13. On or prior to November 1, 2016, defendants or defendant notified the WV PSC that it planned to begin commercial operations of the project on or about November 1, 2016. Upon information and belief, commercial operation did begin on or about November 1, 2016.

14. By information prior to November 2014, Defendants or Defendant sought certification of the subject project as a renewable energy facility pursuant to all state and federal regulations, and did receive the same certification.

15. Plaintiffs owned their real property prior to the initiation of any application to construct the New Creek Wind Project, or prior to initiation of construction.

16. Specifically, Plaintiffs' property line is approximately ____ feet from the closest commercial wind turbine. (Exact distance will be closer than the home and will be supplied by supplemental pleading).

17. Beginning no earlier than November 1, 2016, and continuing unabated on a daily basis, the utility scale wind turbines generated both blade and turbine noises which has and continues to significantly, adversely and unreasonably affect plaintiffs in their use and development of their real property.

18. Specifically, while plaintiffs are outside on their property, they are constantly confronted with irritating and unabated audible noise which significantly limits the use and enjoyment of their property and results in annoyance along with other symptoms some of which are included in the list containing, headaches, hearing problems, anxiety, irritability and other physical symptoms and associated mental and emotional harm, among other affects, including but not limited to further development of their real property for personal and other use.

19. While plaintiffs are inside their home and/or when standing or utilizing their real property they experience some of or all of the following: disturbed sleep, headaches, rapid heartbeat, anxiety and nervousness, joint pain, an inability to clear ears, fatigue, vertigo, depression, tinnitus, irritability and anger from both audible noises, non-audible infra sound, often sensed as a vibration or pressure change rather than heard and shadow/light flicker.

20. The effect of the continuing operation of the NCW, with respect to the acoustic energy emitted by it in any form perceivable by Plaintiffs, is more severe and may vary in its intensity depending upon the configuration of blades and turbines and the rate at which the blades may turn. Each plaintiff perceives this affect differently.

21. Plaintiffs believe that to a significant degree the monetary value of their real property has been negatively affected by the presence and operation of the NCW. Plaintiffs believe that this devaluation of their real property is not less than 30% and may be much greater, but would defer to expert analysis.

22. The presence of the NCW so close to their home and/or real property has substantially and unreasonably negatively affected the plaintiffs quiet use and enjoyment of living in a previously tranquil rural/ wilderness country setting resulting in emotional stress including irritability, anxiety, sadness and despondency, among other negative affects.

23. The presence of the utility scale wind turbines installed in the very heart of the community, overlooking the homes from the ridge above them, has caused plaintiffs, when traveling in their automobiles to work or necessary trips , or walking on their property to come closer to the same which on numerous occasions and depending upon the manner in which the turbine and blades are configured, causes exacerbation of personal, mental and emotional or physically negative effects as pled herein.

24. The presence of the utility scale wind turbines as sited, has already and will for the duration of their operating life, estimated at 15-20 years or more, substantially and unreasonably affect the serenity, ambience and aesthetic nature of the immediate community within which Plaintiffs reside.

25. The operation of the NCW continues to produce unreasonable and significant negative consequences to Plaintiffs personal, mental, emotional and physical wellbeing in addition to continuing to unreasonably interfere with the expected or anticipated use and enjoyment of their real property, all of which separately and in combination create negative effects and have contributed to a loss or devaluation of their real property. This initial and continuing operation has reasonably interfered with the use and enjoyment of the Plaintiffs property along with unreasonably affecting the Plaintiffs health and well-being. Plaintiffs believe NCW will continue to operate in a manner similar to its past and present and so will continue to impact Plaintiffs for the foreseeable future.

26. Defendants , individually and collectively, knew or should have known that this project would unreasonably interfere with Plaintiffs use and enjoyment of their property, adversely affect the Plaintiffs personally, result in negative physical and associated mental and emotional harm and otherwise adversely affect the value and use and enjoyment of their real property.

27. At no time have Plaintiffs contributed whatsoever to the harm described herein.

28. Plaintiffs' right to address defendants' conduct exists independently of the issuance of any public permits.

## COUNT I

## NUISANCE

29. Plaintiffs repeat and incorporate by reference all allegations contained in paragraphs 1 through 28 of this Complaint as if set forth verbatim herein.

30. Defendants' unreasonable and/or intentional operation of NCW causes substantial and unreasonable injury or interference to Plaintiffs' use and enjoyment of their property.

31. The interference is so substantially unreasonable as to cause Plaintiffs to suffer a significant diminution in the use and value of their real property and personal physical and associated emotional and mental harm, adverse physical symptoms including certain identifiable factors inclusive of : annoyance, headaches, hearing problems, joint pain, dizziness and vertigo, rapid heartbeat, tinnitus, nervousness, sleeplessness and associated mental and emotional symptoms including irritability, anxiety, depression, sluggishness, anger, distractibility and other symptoms enumerated herein. The physical, mental and emotional symptoms identified herein and suffered by Plaintiffs, are directly and proximately caused by Defendants' conduct and shall continue for the reasonably foreseeable future, if not becoming more pronounced and debilitating as time progresses. It is further reasonably anticipated that at some point in the future, Plaintiffs

will most likely be forced to relocate or abandon their preferred home, or sell the same or not developed their real property as anticipated.

32. Defendants conduct is unreasonable and imposes immediate, substantial and irreparable injury upon Plaintiffs. Such injury will continue to result before an adversarial hearing can be conducted. No adequate remedy at law is available to Plaintiffs, who will be forced to institute a multiplicity of lawsuits to recover for the continuing harm caused by the nuisance. The benefits to Plaintiffs in obtaining an injunction are equal to or outweigh the potential harm which Defendants would incur were the injunction granted. The public interest is best served by granting the injunction and Plaintiffs are likely to succeed on the merits of the case.

**WHEREFORE**, Plaintiffs pray this court enter an injunction abating the nuisance caused by Defendants, or in the alternative, if this court deems abatement to be improper, enter judgment against Defendants for compensatory and punitive damages in an amount in excess of $75,000.00 with interest and costs and for such other and further relief as this court shall deem just and proper, both at law and equity.

## COUNT II

### NEGLIGENCE

33. . Plaintiffs repeat and incorporate by reference all allegations contained in paragraphs 1 through 32 of this complaint as if set forth verbatim herein.

34. Defendants have a duty not to conduct operations which in the exercise of a reasonably prudent person in the same or similar circumstances, know, or should know upon the exercise of reasonable care has a significant probability of causing personal physical and associated emotional and mental harm to others, including Plaintiffs.

35. Defendants breached that duty by negligently, recklessly and/or intentionally siting, constructing and operating the NCW project knowing that the constant and sometimes exacerbated noise levels and infra sound levels which would be produced by the operation of the NCW project would directly and proximately cause Plaintiffs, and each of them to differing degrees suffer adverse physical symptoms including annoyance, headaches, dizziness, rapid heartbeat, jitteriness, hearing problems, sleeplessness and associated mental and emotional symptoms including irritability, anxiety, sluggishness, anger and other symptoms enumerated herein.

36. The physical, mental and emotional symptoms identified herein and suffered by Plaintiffs, are directly and proximately caused by Defendants' conduct and shall continue for the reasonably foreseeable future, if not becoming more pronounced and debilitating as time progresses. It is further reasonably anticipated that at some point in the future, Plaintiffs will be forced to relocate and abandon their home.

37. At no time have Plaintiffs contributed whatsoever to the harm described herein.

WHEREFORE, Plaintiffs pray this court enter judgment against Defendants for compensatory and punitive damages in excess of $75,000.00, with interest and costs and for such other and

further relief as this court shall deem just and proper, both at law and equity.

## COUNT III

## TRESPASS

38. Plaintiffs repeat and incorporate by reference all allegations contained in paragraphs 1 through 37 of this complaint as if set forth verbatim herein

39. The above described conduct constitutes a unlawful entry upon Plaintiffs' property of high and low frequency noise as audible noise or sensed as the effect of pressure pulsations on people which directly and proximately limits to an unreasonable extent the use and enjoyment of Plaintiffs' real property both outside and inside so that normal and regular activities previously engaged in, such as fanning, maintenance and general leisure activities while outside; and interference with sleep and protection from outside noise while inside the home, are unreasonably interfered with, disturbed, or altogether prevented.

40. The effect of the continuing operation of the NCW, with respect to trespass of noticed and acoustic energy emitted by it in any form perceivable by Plaintiffs, is more severe and may vary in its intensity depending upon the configuration of blades and turbines and the rate at which the blades may turn.

41. This intrusion is unlawful, without the consent of Plaintiffs and substantially

interferes with Plaintiffs' possessory interests in their property.

**WHEREFORE**, Plaintiffs pray this court enter judgment against Defendants for compensatory and punitive damages in an amount in excess of $75,000.00, with interests and costs and for such other and further relief as this court shall deem just and proper, both at law and equity.

PLAINTIFF DEMANDS A TRIAL BY JURY.

                                      **THOMAS H. LANTZ, JR.** and
                                      **ELLEN MARIE LANTZ,**
                                      **By Counsel**

/s/ *Henry E. Wood, III, Esquire*
HENRY E. WOOD, III, ESQUIRE
WOOD LAW OFFICE, L.C.
4628 Pennsylvania Ave.
Post Office Box 826
Charleston, WV  25324
WV State Bar No.:  4117